# EXHIBIT A

DOUGLAS K. deVRIES (SB#70633)
deVRIES LAW FIRM
1792 Tribute Road, Suite 480
Sacramento, CA 95815
Tel: (916) 473-4343
Fax: (916) 473-4342
E-mail: dkd@dkdlaw.com

Attorneys for Plaintiff

FILED
Superior Court Of California,
Sacramento
Dennis Jones, Executive
Officer
05/29/2008
skyuingai
By ______________, Deputy
Case Number:
34-2008-00011997-CU-IC-GDS

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

Department Assignments
Case Management 43
Law and Motion 54
Minors Compromise 25

SERGIY VASYLYEV,

Plaintiff,

vs.

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

Defendants.

______________________________/

No.

**COMPLAINT FOR DAMAGES**

1. Breach of the Duty of Good Faith and Fair Dealing
2. Breach of Contract
3. Intentional Concealment
4. Intentional Interference With Contract and Prospective Economic Advantage

**DEMAND FOR JURY TRIAL**

Plaintiff alleges, as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff SERGIY VASYLYEV ("VASYLYEV"or "plaintiff"), is a competent male adult; he was at all times mentioned herein, and is at present, a resident of Sacramento County, State of California.

2. Defendant THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA ("GUARDIAN") is an insurance company domiciled in the State of New York; it was all at times mentioned herein a New York corporation authorized to transact business in California, and transacts business in the County of Sacramento, State of California.

and transacts business in the County of Sacramento, State of California.

3. Defendant BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA ("BERKSHIRE") is an insurance company domiciled in the State of Massachusetts; it was at all times mentioned herein a Massachusetts corporation authorized to transact business in California, and transacts business in the County of Sacramento, State of California.

4. BERKSHIRE is a wholly owned stock subsidiary of GUARDIAN, and performed the processing, adjusting and decision-making on plaintiff's disability insurance claim. The exact day-to-day business relationship and contractual agreements between BERKSHIRE and GUARDIAN are presently unknown in all particulars, including whether or not BERKSHIRE is the successor or assignee of GUARDIAN's obligations under the insurance policies that are the subject of this case; based on information and belief, plaintiff alleges that BERKSHIRE and GUARDIAN are joint venturers, a joint enterprise, interlocking or alter ego corporations, or some other like relationship, and as a result are jointly liable for all the acts or omissions, and each of them, alleged herein. Plaintiff will seek leave to amend, if necessary, when the true facts concerning the nature of the relationship between defendants is known.

5. Jurisdiction of this court is invoked pursuant to Code of Civil Procedure section 410. The amount in controversy exceeds the jurisdictional threshold of this Court by virtue of contract and extra-contractual damages alleged herein, exclusive of costs and interest, as to plaintiff. Pursuant to Code of Civil Procedure section 395(a), venue is proper in the County of Sacramento as the insurance policies at issue were delivered to plaintiff in this county, performance of the insurance contracts through payment of insurance benefits was to occur in this county, and plaintiff was damaged by defendant as a direct result of the breaches of contract and other wrongful acts alleged herein in this county.

6. At all relevant times, defendants, and each of them, were, by and through their officers, boards, agents and employees, the agents and employees of each of the defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of the other.

///

## SUMMARY ALLEGATIONS

7. VASYLYEV has a Ph.D. degree in Physics and Mathematics; his occupation was computer software and system design engineer in the specialized area of emergency dispatching systems. In his occupational capacity, he was employed to oversee and manage the software and systems design of the Sacramento County Sheriff Department's 911 emergency CAD (computer assisted dispatch) system.

8. In addition to his regular occupation, VASYLYEV also engaged in part-time and intermittent activities associated with his ownership of a small self-owned corporation, SVV Technology Innovations, Inc., which involved primarily computer software engineering design and development through the end of 2004, and to a much less extent fabrication of small solar energy collection devices; his SVV-related fabrication work was performed in his garage. In attempts to further supplement his income, he also invested in real estate on a part-time and intermittent basis.

9. During the period 2002 to 2004, VASYLYEV purchased disability insurance from GUARDIAN that specifically insured him in the event he became unable, due to sickness or injury, from performing the substantial and material duties of his regular occupation - computer software and system design engineer.

10. In approximately November 2005, VASYLYEV started to experience frequent headaches, increased blood pressure, fatigue and acute spells of dizziness. He obtained medical treatment for what was diagnosed as 2nd or 3rd degree hypertension, but his symptoms nevertheless significantly worsened over the next nine months, and he also developed reduced cognitive performance, and memory and concentration problems, as well as abdominal pain and other symptoms. As a result, he had to curtail his extra-occupational activities, and his work performance for the Sheriff's Department became increasingly problematic.

11. At the beginning of September 2006, having reviewed his disability insurance policies, and having noted a Residual (partial) Disability Rider, VASYLYEV notified GUARDIAN that he was making a claim for partial disability for the period November 2005 to September 2006 because he was no longer able to develop computer software design business

for SVV. The rider indicated that the insured is entitled to partial disability benefits "... if you are at work and are not totally disabled under the terms of this policy but, because of sickness or injury your loss of income is at least 20% of your prior income." VASYLYEV, while not schooled in insurance or in law, thought that logically this policy provision would apply to his circumstance.

12. As this was transpiring, VASYLYEV had become completely unable to continue working in his regular occupation, and as a result he notified GUARDIAN in early October 2006 that he was now making a total disability claim because as of mid-September he could no longer perform the duties of his regular occupation. Under the terms of his three GUARDIAN disability policies, the initial total disability insurance benefit was $10,480 per month.

13. The claims were processed by BERKSHIRE, and at the conclusion of the three month benefit elimination period and some additional delay by BERKSHIRE, VASYLYEV started receiving his total disability insurance benefits in February 2007; his partial disability claim was denied. However, BERKSHIRE only paid $8,080 per month (under a "reservation of rights"), and claimed that the second policy, which provided for $2,400 per month benefit, was not in force even though VASYLYEV had applied for it, paid the initial premium, received the policy and had never received a lapse or cancellation notice. GUARDIAN advised VASYLYEV that it had made an error internally in not activating the policy in their computer system, and they were investigating in order to assure it did not happen again. However, BERKSHIRE continued to maintain that the policy was not in force, and GUARDIAN subsequently asserted that VASYLYEV had never accepted the policy, which was not true. VASYLYEV never received the benefits from the policy.

14. In Spring 2007, BERKSHIRE set up a medical evaluation and neuropsychological testing of VASYLYEV, but at the conclusion of the neuropsychological testing, and a review of it by a company-retained doctor, BERKSHIRE cancelled the scheduled medical evaluation and removed the reservation of rights on the benefits it was paying. However, BERKSHIRE refused to provide VASYLYEV with the test results or the medical review.

15. In July 2007, VASYLYEV advised BERKSHIRE that SVV had obtained a small

grant from the Federal Department of Energy, and that he was doing some work on it part-time and intermittently fabricating small solar devices, averaging approximately 25 hours per week; this work did not involve the substantial and material duties of his regular occupation, or any aspect of it.

16. In September 2007, BERKSHIRE notified VASYLYEV that it was denying him total disability benefits in spite of the fact that he was unable to work in his regular occupation, and that it would process his claim going forward as a partial disability claim. On a pretext based on VASYLYEV having filed for "partial disability" related to his SVV activities, BERKSHIRE now maintained (erroneously) that he had *two* regular occupations. Inexplicably, BERKSHIRE also arbitrarily reduced what they had been paying VASYLYEV as a monthly disability insurance benefit by 50% to $4,040 per month, and placed the benefits under a "reservation of rights." When VASYLYEV protested, he was told in December 2007 that his claim was being transferred to "another team at BERKSHIRE."

17. In March 2008, the "other team" at BERKSHIRE, denied VASYLYEV all benefits under his policies in spite of the fact that his medical condition had not improved and he could no longer perform the substantial and material duties of his regular occupation. In its attempt to justify this unlawful denial of benefits, BERKSHIRE, among other things, misrepresented VASYLYEV's occupation, miscalculated his income from SVV and did not give credit to his total pre-disability income for purposes of determining his right to benefits. To compound their malfeasance, BERKSHIRE closed with a veiled threat by indicating that they could claim a right to reimbursement of what they had paid him, but would refrain from doing so.

18. As set forth in detail below, the facts and applicable law establish that the conduct of BERKSHIRE and GUARDIAN breached the contracts (insurance policies), constituted bad faith conduct and intentional concealment of facts and law from VASYLYEV material to his claim, and to the extent that BERKSHIRE is not a successor to, or assignee of, the GUARDIAN policies issued to VASYLYEV, BERKSHIRE intentionally interfered with VASYLYEV's rights under the contracts (policies) and his prospective economic advantage.

///

## FACTUAL ALLEGATIONS

19. VASYLYEV was born on June 21, 1968 in the Ukraine. He has a Ph.D. degree in Physics and Mathematics, and his regular occupation at all relevant times herein was computer software and system design engineer.

20. In or about August 2002, VASYLYEV purchased an individual occupation-specific disability insurance policy, also known as a regular occupation or own occupation disability insurance, and certain enhancement riders from GUARDIAN, Policy No. G921488, which was issued on August 20, 2002. A copy of the policy (hereinafter "Policy") is attached hereto as Exhibit A. The Policy is non-cancellable and guaranteed renewable, and initially provided for a monthly disability insurance benefit of $5,050 per month in the event that VASYLYEV became unable to perform the substantial and material duties of his regular occupation in the usual and customary way and with reasonable continuity as a result of sickness or injury, as determined under the terms of the policy and governing California law. The Policy, with riders, also provides for automatic benefit increases, as follows: an additional $210 per month as of August 20, 2003; $220 as of August 20, 2004; $220 as of August 20, 2005, and $230 as of August 20, 2006. It further allows for Future Increase Options (FIO), exercisable even while disabled, and it provides that in the event VASYLYEV became entitled to receive monthly benefits, their amount would be increased on an annual basis in an amount corresponding to the Consumer Price Index - Urban ("CPI-U"), up to a maximum of 6%, after the first 12 months of receiving benefits. The Policy also provided for a waiver of premium in the event of disability. The Policy provided for an initial three month benefit elimination period and a relevant maximum benefit period to age 65.

21. In or around July 2003, VASYLYEV exercised an increase option, and as a result GUARDIAN issued a second policy, Policy No. G927380, that added an additional disability insurance benefit of $2,400 per month. A copy of the second policy is attached hereto as Exhibit B.

22. In or around July 2004, VASYLYEV applied for a second optional increase, and as a result GUARDIAN issued a third policy, Policy No. 932949, that added an additional

disability insurance benefit of $2,150 per month. A copy of the third policy is attached hereto as Exhibit C.

23. As of August 20, 2006, as a result of the Policy base benefit amounts, four automatic increases and two optional increases, the Policies promised that in exchange for VASYLYEV's premium payments, GUARDIAN would pay VASYLYEV an initial monthly benefit totaling $10,480 in the event of disability ($5,050 per month on policy G921488 plus automatic increases of $210, 220, 220 and 230, an additional $2,400 per month on policy G927380, and an additional $2,150 on policy G932949).

24. Plaintiff has paid all premiums due under the Policy to defendants at all relevant times and has performed all obligations under the Policy on his part to be performed.

25. VASYLYEV was employed full-time by Sapphire Technologies to work at the Sacramento County Sheriff's Department performing the substantial and material duties of his occupation; his job title was Programmer Analyst / CAD Team Lead. VASYLYEV worked 40 hours per week, approximately 75% of the time performing computer program and system design and engineering analysis and 25% of the time performing project management in software development.

26. In addition to performing his regular occupation, VASYLYEV was also a 100% shareholder of a sub-S corporation, SVV Technology Innovations, Inc. (hereinafter "SVV"), and spent approximately an average of 20 hours per week after regular work hours and outside his regular occupation working on an irregular and intermittent basis on a contract through SVV with SMUD on a project called "Slat Array Concentrator Development," which involved primarily software engineering and design of two solar concentrating systems, and to a lesser extent fabrication of devices in his garage. The contract began in April 2002 and ended in January 2005, with an extension date to December 31, 2007 only for legal purposes related to SMUD's anticipated receipt of retention fund hold backs from a California agency.

27. VASYLYEV was unschooled in matters pertaining to disability insurance, and had no education, training or experience in that regard. He was also ignorant of California law on the subject, which, to the layman, is specialized, technical, arcane and complex. For instance,

VASYLYEV was unaware of the fact that the definition of, meaning of and application of the terms of his disability insurance policies pertaining to "total disability," "residual (or partial) disability," and "occupation" were subject to special legal rules under California law that are not referred to in the Policies, but which alter or expand the entitlement to benefits under the applicable terms.

28. In approximately November 2005, VASYLYEV started to experience frequent headaches, increased blood pressure, fatigue and acute spells of dizziness. As a result, he sought medical treatment and curtailed certain activities, including efforts to secure contract work for SVV and investment opportunities in real estate.

29. Toward the end of Summer 2006, VASYLYEV' s condition worsened again, and he contracted moderate to severe hypertension, which was difficult to control. A sharp and sustained increase in systemic blood pressure was accompanied by exacerbation of fatigue, reduced cognitive performance, memory and concentration problems, headaches, abdominal pain and other symptoms.

30. On or about September 1, 2006, VASYLYEV phoned GUARDIAN to give them notice that he was going to make a claim for "residual (partial) disability," and he was transferred to the BERKSHIRE disability claims department; a BERKSHIRE claims person took his information. VASYLYEV received claim forms from BERKSHIRE, and completed and returned them on or about September 16, 2006.

31. By September 19, 2006, VASYLYEV became, due to further worsening of his hypertension-related symptoms and side effects from anti-hypertensive medications, totally unable to perform the substantial and material duties of his regular occupation; attempts to perform his work only further exacerbated the symptoms. As a result, on or about October 4, 2006, VASYLYEV phoned BERKSHIRE and advised them that he was making a "total disability" claim as of September 19, 2006. On September 26, 2006, Valerie Druzhnikova, P.A., Ph.D., the Physician's Assistant under the supervision of VASYLYEV's physicians, Pavel Polsky, M.D. and Arnold Greenberg, M.D., completed a BERKSHIRE Attending Physician's Statement form ("APS") certifying that VASYLYEV was "partially unable to work from

11/29/2005 through 9/18/2006" and "totally unable to work from 9/19/2006 through present."

32. On or about September 12, 2006, BERKSHIRE acknowledged VASYLYEV's notice of claim, but only under two of the policies, the first policy (G921488) and the third policy (G932949), but not the second policy (G927380). In response, plaintiff, on or about October 6, 2006, indicated to BERKSHIRE that he was making a claim under all three GUARDIAN policies.

33. On or about January 16, 2007, BERKSHIRE told VASYLYEV that its medical consultant had talked to plaintiff's physicians, and that they did not support plaintiff's disability claim, (which was not a correct statement) and as a result, BERKSHIRE was going to select a medical examiner to examine and evaluate plaintiff.

34. In February 2007, BERKSHIRE started paying plaintiff disability insurance benefits of $8,080 per month under a "reservation of rights," and on or about February 5, 2007, BERKSHIRE and GUARDIAN approved a waiver of premium payments going forward.

35. On February 15, 2007, BERKSHIRE had a field representative interview VASYLYEV, and tape record the interview; it was determined later that the transcription of the interview contained numerous errors and omissions.

36. On or about February 22, 2007, VASYLYEV submitted claims forms, including an APS certifying that plaintiff was "completely unable to work."

37. On or about February 23, 2007, BERKSHIRE wrote to VASYLYEV telling him that the second policy (G927380) was "not in force," and enclosed what was alleged to be a copy of a letter dated December 1, 2003 from GUARDIAN addressed to plaintiff that allegedly confirmed that plaintiff did not accept that policy, and that it was void from the beginning. This was an incorrect statement, and the December 2003 letter was never received by plaintiff. In fact, in July 2004, GUARDIAN had confirmed in writing to plaintiff that it had inadvertently failed to activate the policy in its system after it had received plaintiff's application and initial premium and had sent him a policy. GUARDIAN assured plaintiff that it would further investigate in order to make sure that that never happened again. Further, GUARDIAN never sent plaintiff a premium deficiency notice, a cancellation notice, or a lapse notice, and

GUARDIAN never requested payment of premiums due, if any, from August 2003 to September 2006, at which time plaintiff became entitled to a waiver of premium of benefits due to his disability. If any premiums were due, GUARDIAN never gave plaintiff the opportunity to cure, nor did they request payment of back premiums that would have been due only as a result of GUARDIAN'S internal error in any event. In December 2007, GUARDIAN notified plaintiff by letter that its investigation into the status of the second policy (G927380) "is still under way," and yet benefits under that policy had still not been paid to plaintiff.

38. On or about March 21, 2007, VASYLYEV submitted ongoing claims forms, including an APS that confirmed "completely unable to work."

39. On or about April 5, 2007, BERKSHIRE notified VASYLYEVthat they had scheduled a medical evaluation with a medical doctor they had selected to occur on June 13, 2007. On or about April 17, 2007, plaintiff submitted ongoing claim forms, including an APS that confirmed "completely unable to work."

40. On or about May 2, 2007, BERKSHIRE denied plaintiff's residual (partial) disability claim for the period November 2005 through September 2006.

41. On or about May 7, 2007, BERKSHIRE notified VASYLYEV that they were also going to have him independently evaluated by a neuropsychologist, including testing; the tests were completed and then forwarded to a medical consultant selected by BERKSHIRE for review and analysis.

42. On or about May 15, 2007, plaintiff requested a copy of BERKSHIRE'S residual disability claim file, and on or about May 22, 2007, BERKSHIRE refused to provide plaintiff with a copy as requested.

43. On or about May 17, 2007, plaintiff submitted ongoing claim forms, including an APS confirming "completely unable to work."

44. On or about May 24, 2007, BERKSHIRE notified VASYLYEV that the medical examination it had scheduled plaintiff to undergo with a medical doctor on June 13, 2007, was cancelled by BERKSHIRE, and about the same time BERKSHIRE also removed the "reservation of rights" on the total disability benefits it was paying to plaintiff. BERKSHIRE

did not, however, share with plaintiff the results of the neuropsychological testing and its interpretation and evaluation, and subsequently refused to provide same to plaintiff.

45. On or about June 19, 2007, VASYLYEV submitted ongoing claim forms, including an APS confirming "completely unable to work."

46. On or about July 5, 2007, GUARDIAN again claimed that policy number two (G927380) was not in force because plaintiff did not accept it, although they had no facts to support such a claim.

47. On or about July 19, 2007, VASYLYEV submitted ongoing claim forms, including an APS confirming "completely unable to work."

48. On or about July 23, 2007, VASYLYEV advised BERKSHIRE that SVV had obtained a Federal Department of Energy grant, and that he would be working part-time from home on it. In response, BERKSHIRE requested extensive documentation from plaintiff even though the SVV grant-related part-time work was not his regular occupation nor did it involve the substantial and material duties of his regular occupation, or any aspect of it, and therefore it did not affect plaintiff's entitlement to total disability regular occupation benefits. In addition, on or about July 27, 2007, BERKSHIRE issued a total disability benefit to plaintiff under a new "reservation of rights," citing the SVV grant-related activities as the reason.

49. On or about August 13, 2007, plaintiff provided the Federal Department of Energy grant document to BERKSHIRE as it had requested.

50. On or about September 10, 2007, VASYLYEV inquired of BERKSHIRE if they were interpreting his policy in a manner aimed at delaying or stopping payment of his total disability benefits. On September 18, 2007, BERKSHIRE denied plaintiff further total disability benefits based on money received from the SVV grant. In conjunction with this improper denial, BERKSHIRE misrepresented plaintiff's regular occupation as being a "computer programmer." They also now claimed that he had two regular occupations, and that since he was receiving money in one of them they would treat his claim as one for residual (partial) disability (if as a result of sickness or injury he had a loss of income of at least 20% of prior income). BERKSHIRE, without explanation or justification, started paying plaintiff only $4,040 a month,

which it characterized as "residual disability benefits at a rate of 50%," and that it was being paid under a "reservation of rights;" the $4,040 represented half of the $8,080 they had previously been paying as a total disability benefit (the $8,080 represented the total of the first policy's base benefit of $5,050, four automatic increases totaling $880, and the third policy's benefit amount of $2,150. Neither the total disability benefit that had previously been paid, nor the 50% residual disability now being paid included any portion of the $2,400 under the second policy.

51. On or about September 19, 2007, BERKSHIRE informed VASYLYEV in writing that based on plaintiff having filed a partial disability claim form related to SVV for the period November 2005 to September 2006, he had two occupations. This was an incorrect characterization as prior to December 2004 VASYLYEV's SVV work was primarily computer software design engineering, but after 2004 he was no longer able to perform that work. The fabrication of solar devices was only an incidental activity and never constituted a substantial and material duty of VASYLYEV's regular occupation, nor could it reasonably be characterized as such. On or about October 9, 2007, plaintiff protested that he only had one regular occupation (computer program and systems design engineer) and that after 2004 SVV involved a separate capacity, which would involve sporatic, intermittent part-time work unrelated to his regular occupation. In addition, on or about October 9, 2007, the APS clarified that plaintiff was "completely unable to work in his regular occupation." On or about October 25, 2007, plaintiff reiterated that he was totally disabled, protested the residual disability claim denial by BERKSHIRE, and submitted detailed documentation in support of his position. Nevertheless, on or about November 16, 2007, BERKSHIRE continued to maintain that the SVV grant-related work fabricating small solar collection devices now constituted plaintiff's regular occupation. In response, on or about December 4, 2007, plaintiff explained to BERKSHIRE that SVV was not a regular occupation and did not involve full-time work; it was only part-time and intermittent and at that time averaged 25 hours or less per week fabricating (assembling) solar energy devices at his home.

52. At or about this time in the claim, VASYLYEV was advised that his claim was being transferred to "another team at BERKSHIRE." On or about December 20, 2007, plaintiff

submitted ongoing claim forms, including an APS that confirmed that he was "completely unable to work in his regular occupation." On or about that same date, BERKSHIRE notified plaintiff that his "appeal" of the prior residual disability denial for the period November 2005 to September 2006 was denied; however, there is no "appeal" provided or required under either the terms of the Policies or the law applicable to VASYLYEV's claim.

53. On or about December 27, 2007, BERKSHIRE issued plaintiff a 50% benefit in the amount of $4,148.52, which reflected a $108.52 cost of living adjustment on the benefits from the first and third policies (G9214880 and G9329490).

54. On or about March 24, 2008, BERKSHIRE denied VASYLYEV all benefits going forward, claiming that plaintiff was not totally disabled because he was receiving money for SVV grant-related work, which it again characterized as now being his regular occupation. They also alleged that the decrease in his income in that regard was not due to sickness, but rather to the amount of the grant. The denial letter did not refer to the neuropsychological testing results nor the medical review and evaluation of them. In passing, BERKSHIRE acknowledged that the SVV-related work did not involve computer program and system designed engineering, but BERKSHIRE claimed that SVV involved "solar energy research." They did not specify what the alleged "research" was nor what it supposedly entailed, and they ascribed such research capability to plaintiff without investigating whether, if research was being done, whether plaintiff was the person who actually did research. Further, without clarifying with plaintiff the circumstances or details, BERKSHIRE based its decision on the gross money SVV received from partial payments under the Department of Energy grant, and simply divided the total by plaintiff's proposed hourly rate contained in the SVV grant submission. On this unsupportable basis, even if BERKSHIRE thought it could properly characterize the claim as one for residual disability benefits, they erroneously denied VASYLYEV benefits by asserting that plaintiff was working 30-84 hours per week. In fact, as plaintiff had previously advised BERKSHIRE, he only worked 25 hours or less per week on average, the work was part-time and intermittent, and the money received was not for income alone, but also included all direct and indirect costs and expenses of SVV. BERKSHIRE also alleged that the restrictions and limitations on the APS

forms were not consistent with his current work, but this was erroneous, as plaintiff's current work did not involve any of the substantial and material duties of his regular occupation, and was far less demanding. BERKSHIRE concluded with a veiled threat by indicating that they claimed a right to seek reimbursement from all prior benefits paid to VASYLYEV, but that they would not at that time seek the money from him.

**FIRST CAUSE OF ACTION**

**(Breach of Duty of Good Faith and Fair Dealing)**

PLAINTIFF VASYLYEV FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS BERKSHIRE AND GUARDIAN, ALLEGES:

55. Plaintiff VASYLYEV refers to Paragraphs 1-54 and incorporates those paragraphs as though set forth in full in this Cause of Action.

56. The law implies in every insurance policy, and imposes on BERKSHIRE and/or GUARDIAN, a duty of good faith and fair dealing.

57. Defendants, and each of them, have breached their duty of good faith and fair dealing owed to plaintiff in the following respects:

(A) Misrepresenting to Plaintiff pertinent facts or insurance policy provisions relating to the coverages at issue;

(B) Failing to pay disability benefits to plaintiff at a time when defendant knew plaintiff was entitled to said benefits under the terms of the Policy;

(B) Delaying payment of disability benefit while knowing plaintiff's claim for benefits under the Policy to be valid;

(C) Failing to pay plaintiff disability benefits pursuant to plaintiff's claim at a time when defendant had insufficient information within its possession to justify said action and in fact, had information within their possession directly opposing said action;

(D) Not attempting in good faith to reasonably investigate, evaluate and to effectuate a prompt, fair and equitable settlement of plaintiff's claim for disability benefits in which liability had become reasonably clear;

(E) Failing to provide a reasonable explanation of the basis relied upon in the

Policy, in relation to the applicable facts, for the denial of plaintiff's claim for disability benefit;

(F) Adopting a business practice of ignoring applicable California statutes and regulations on the issues of "total disability", "occupation" and related insurance terms and claims practices, including but not limited to resolving ambiguities and doubts against claimants;

(G) Concentrating on information, out of context, to deny claims without seeking out and/or giving weight to information that would support a claim;

(H) Misrepresenting the substance of relevant evidence in denying the claim;

(I) Failing to provide explanation of all coverages and benefits available under the terms of the policies and applicable law;

(J) Failing to assist the plaintiff in receiving all benefits to which he is entitled under the terms of the policies, and intentionally concealing the type of benefits available under the terms of the policies and applicable law;

(K) Interpreting all facts and coverages against the insured, and placing the financial interests of the insureds above those of the insured;

(L) Compelling plaintiff to secure the services of an attorney and commence litigation in order to recover the amount due under the policies.

58. Plaintiff is informed and believes, and thereon alleges, that defendants have breached their duty of good faith and fair dealing owed to plaintiff by other acts or omissions of which plaintiff is presently unaware. Plaintiff will seek leave of court to amend this complaint at such time as plaintiff discovers the other acts or omissions of said defendant constituting such breach.

59. As a legal result of the aforementioned wrongful conduct of defendant, plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

60. As a further legal result of the aforementioned wrongful conduct of defendant, plaintiff has suffered anxiety, worry, mental and emotional distress, and other incidental damages and out of pocket expenses, all to plaintiff's general damage in a sum to be determined

at the time of trial.

61. As a further and legal result of the unreasonable and bad faith conduct of defendant, plaintiff was compelled to retain legal counsel to obtain benefits due under the Policy. Therefore, defendant is liable to plaintiff for attorney fees reasonably necessary and incurred by plaintiff to obtain the policy benefits in a sum to be determined at the time of trial.

62. Defendants' conduct described herein was intended by the defendant to cause injury to the plaintiff or was despicable conduct carried on by the defendant with a willful and conscious disregard of the rights of plaintiff, subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention to deprive plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling plaintiff to punitive and exemplary damages in an amount appropriate to punish or set an example of defendants.

## SECOND CAUSE OF ACTION

**(Breach of Contract)**

PLAINTIFF VASYLYEV, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS BERKSHIRE AND GUARDIAN, FOR BREACH OF CONTRACT, ALLEGES:

63. Plaintiff refers to Paragraphs 1 through 62 above and incorporates those paragraphs as though set forth in full in this cause of action.

64. That plaintiff was insured under the Policies, copies of which are attached hereto as Exhibits A, B and C, which at all relevant times were in full force and effect. The terms and conditions of the Policies in issue provided that the plaintiff would be covered for disability due to sickness or injury where he could no longer perform the material and substantial duties of his regular occupation.

65. Plaintiff has performed all the conditions on his part to be performed.

66. In or about September 2006, and thereafter, plaintiff VASYLYEV was unable to perform the substantial and material duties of his regular occupation in the usual and customary

way and with reasonable continuity due to sickness, and submitted a claim for disability benefits to GUARDIAN and BERKSHIRE in September 2006.

67. The defendants, and each of them, breached their contracts with plaintiff from and after December 1, 2006 , first by delaying and then by refusing and failing to pay plaintiff the full "total" disability benefits to which he is entitled under the terms of the Policies and applicable law. Further, even if defendants considered themselves justified in withholding total disability benefits from plaintiff, they wrongfully withheld any and all benefits, including residual or partial disability benefits.

68. As a direct and legal result of defendants' aforementioned breach of the subject insurance contract, plaintiff has suffered and will continue to suffer in the future, contractual damages under the terms and conditions of the Policy, and other incidental damages and out-of-pocket expenses, all in a sum to be determined according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

**(Intentional Concealment)**

PLAINTIFF VASYLYEV, FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS BERKSHIRE AND GUARDIAN, FOR INTENTIONAL CONCEALMENT, ALLEGES:

69. Plaintiff refers to Paragraphs 1 through 68 and incorporates those paragraphs as though set forth in full in this cause of action.

70. The law imposes on BERKSHIRE and GUARDIAN a duty to be truthful and forthright in their dealings with plaintiff and not intentionally and knowingly conceal material facts concerning, but not limited to, such things as the terms of the subject disability insurance policies, their meaning and effect, the law applicable to such policies, their duties and responsibilities as insurers to their insured, and the insured's rights and entitlements under the subject policies.

71. Defendants BERKSHIRE and GUARDIAN breached their duty to plaintiff by intentionally and knowingly concealing from plaintiff material facts concerning the subject disability benefits and his entitlement to them.

72. Specifically, BERKSHIRE and GUARDIAN, intentionally and knowingly concealed from plaintiff material facts, including the following:

a. the interpretation of "total disability" and "residual (partial) disability" terms in disability insurance policies, and their application to California-based claims, is governed not by the wording of the policy terms, but by California law;

b. the governing California law that supplants the policies' relevant disability definitions is well known and referred to in the disability insurance industry as the "California definition," to wit: total disability does not mean a state of helplessness; rather it means the inability due to sickness or injury to perform the substantial and material duties of your regular occupation in the usual and customary way and with reasonable continuity;"

c. the governing California law provides that total disability insurance insures against the loss of the insured's ability to engage in an occupation, not replacement of specific income, so that if a claimant meets the California definition of total disability, any income derived from other sources is irrelevant and cannot be used as a means to defeat a total disability claim or reduce total disability benefits;

d. the governing California law prohibits a disability insurer from characterizing part-time or intermittent work as an occupation, incidental duties as constituting an occupation or from characterizing extra-curricular activities separate and apart from one's occupation as constituting an occupation; and

e. the governing California law prohibits a disability insurer from characterizing a total disability claim as being a residual (partial) disability claim in order to defeat a claimant's right to perfect a total disability claim or reduce the amount of total disability benefits.

73. BERKSHIRE and GUARDIAN were well aware of these facts and their materiality and importance to plaintiff's claim when they intentionally and knowingly withheld them as part of their efforts to improperly deny plaintiff's claim and withhold benefits from him to which he was rightfully entitled.

74. VASYLYEV, having no training or experience in insurance or law, and being unversed in the intricacies of disability insurance policy terms and applicable law, reasonably

relied on the representations that were made by BERKSHIRE and GUARDIAN, and was not aware of what was being concealed from him or the full extent of its materiality and importance to his claim, all to his damage as alleged herein.

75. As a result of BERKSHIRE and GUARDIAN's breach of the duty to refrain from intentionally deceiving plaintiff, VASYLYEV suffered damages in the form of lost disability insurance benefits, emotional distress and other incidental and consequential damages; he was also required to ultimately seek the services of an attorney and incur an obligation to pay expenses and attorney fees.

76. Defendants' conduct described herein was intended by the defendant to cause injury to the plaintiff or was despicable conduct carried on by the defendant with a willful and conscious disregard of the rights of plaintiff, subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention to deprive plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling plaintiff to punitive and exemplary damages in an amount appropriate to punish or set an example of defendants.

## FOURTH CAUSE OF ACTION

**(Intentional Interference With Contract And Prospective Economic Advantage)**

PLAINTIFF VASYLYEV, FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT BERKSHIRE, FOR INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE, ALLEGES:

77. Plaintiff refers to Paragraphs 1 through 76 above and incorporates those paragraphs as though set forth in full in this cause of action.

78. BERKSHIRE did not issue the GUARDIAN Policies to VASYLYEV, and was not a party to those contracts; it is understood, as alleged above in paragraph 4, that BERKSHIRE is a wholly owned stock subsidiary of GUARDIAN, and plaintiff has no knowledge at present that BERKSHIRE is the successor to, or assignee of, GUARDIAN on the obligations imposed by the terms of the subject contracts.

79. The law imposes on BERKSHIRE a duty to refrain from intentionally and knowingly doing anything that interferes with plaintiff's rights under the contracts (Policies) or that interferes with plaintiff's right to receive the economic benefits to be derived from those contracts, including receipt of future disability insurance benefits rightfully available from those contracts (Policies).

80. Defendant BERKSHIRE breached their duty to plaintiff by intentionally and knowingly interfering with plaintiff rights under the subject contracts (Policies) to receive the full disability benefits due him and his right to receive future benefits to which he would be rightfully entitled.

81. In performing the acts and omissions alleged in paragraphs herein above, BERKSHIRE intentionally and knowingly interfered with plaintiff's right to receive the benefits of the contracts (Policies) and plaintiff's prospective economic advantage as alleged above.

82. As a result of BERKSHIRE's breach of the duty not to intentionally and knowingly interfere with plaintiff's above-referenced rights, VASYLYEV suffered damages in the form of lost disability insurance benefits, emotional distress and other incidental and consequential damages; he was also required to ultimately seek the services of an attorney and incur an obligation to pay expenses and attorney fees.

83. Defendants' conduct described herein was intended by the defendant to cause injury to the plaintiff or was despicable conduct carried on by the defendant with a willful and conscious disregard of the rights of plaintiff, subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention to deprive plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling plaintiff to punitive and exemplary damages in an amount appropriate to punish or set an example of defendants.

WHEREFORE, plaintiff prays for judgment against defendant, as follows:

1. Damages to date of judgment for failure to provide full benefits under the Policy, plus interest, including prejudgment interest, and other economic and consequential damages,

in a sum to be determined at the time of trial;

2. Past and future general damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3. Punitive and exemplary damages in an amount appropriate to punish or set an example of defendants;

4. For attorneys' fees and expenses reasonably incurred by plaintiff to obtain the Policy benefits, and resulting from fraud, in a sum to be determined at the time of trial;

5. Pre-judgment interest at the appropriate legal rate;

6. Future special and general damages for breach of the implied covenant of good faith and fair dealing, including but not limited to the reasonable present value of future disability benefits;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court deems just and proper.

Dated: May 28, 2008

deVRIES LAW FIRM

By: DOUGLAS K. deVRIES
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all causes of action and on all issues herein.

Dated: May 28, 2008

deVRIES LAW FIRM

By: DOUGLAS K. deVRIES
Attorney for Plaintiff